EXHIBIT 1

# ATOMIC ENERGY COMMISSION

## URANIUM ENRICHMENT SERVICES

### Criteria

1. *General.* (a) The U.S. Atomic Energy Commission (AEC) hereby gives notice of the establishment of criteria setting forth the terms and conditions under which it offers, subject to available capability, to provide uranium enrichment services in facilities owned by AEC, as authorized by the Atomic Energy Act of 1954, as amended (the Act). Specifically, these criteria are established pursuant to section 161v of the Act, which was added by Public Law 88-489, the "Private Ownership of Special Nuclear Materials Act." As used in this notice, the term "enrichment services" or "enriching services" means the separative work (Note 1.) necessary to enrich or further enrich uranium in the isotope 235. The enrichment services shall be provided pursuant to contracts to be entered into (1) with persons licensed under section 53, 63, 103, or 104 of the Act, and/or (2) in accordance with agreements for cooperation arranged pursuant to section 123 of the Act.

NOTE 1. The work devoted to separating a quantity of uranium (feed material) into two fractions, one a Product fraction containing a higher concentration of U-235 than the Feed and the other a Tails fraction containing a lower concentration of U-235.

(b) The contracts will provide for the furnishing of depleted, normal or enriched uranium by the customer and the delivery by the AEC of an appropriate quantity of enriched or more highly enriched uranium. The quantity of material to be furnished by the customer in relationship to the quantity of enriched uranium to be delivered by the AEC and the related amount of separative work to be performed by the AEC normally will be determined in accordance with the then-current standard table of enriching services published by the AEC (note 2). In the event, however, that the AEC does not have available capability to undertake to perform requested enriching services on short notice is accordance with such standard table, the AEC may agree to perform such services in accordance with such other table as is within its capability. The general features of standard contracts, including the basis for AEC's charges for enriching services, are set forth herein.

(c) Except as specifically provided, nothing in this notice shall be deemed to affect the sale or leasing of special nuclear material by the AEC or the entering into of "barter" arrangements whereby special nuclear material is distributed pursuant to section 54 of the Act and source material is accepted in part payment therefor. Neither the execution of an agreement for the furnishing of uranium enrichment services nor the termination or expiration of such agreement will in itself alter or affect any rights and obligations of any AEC licensee under its license or construction permit other than those regarding any allocation of special nuclear material in connection therewith (note 3).

NOTE 2. The initial table, as presently contemplated, will not provide to the customer flexibility to select a quantity of feed and an amount of separative work other than those specified in the AEC table. However, the AEC is giving further study to the question of providing, at some date in the future, a form of contract under which flexibility would be available.

NOTE 3. In view of the authority granted to the AEC under the Act to execute long-term fuel supply agreements, the AEC is reviewing its existing regulations and procedures with respect to the need for allocations of special nuclear material in licenses.

(d) The criteria contained in this notice are subject to change by the AEC from time to time; however, any such changes shall be submitted to the Joint Committee on Atomic Energy for its review in accordance with the Act.

2. *Effective date.* This notice is effective upon publication in the FEDERAL REGISTER.

3. *Period of contract.* Contracts with domestic licensees will be for specified periods of time up to 30 years. Contracts entered into in accordance with an international agreement for cooperation must be for a term within the period of such agreement. In either case, contracts may be entered into at any time after the effective date of this notice; however, no such contract shall provide for delivery of special nuclear material by AEC or delivery of uranium feed material to AEC before January 1, 1969.

4. *Enrichment of uranium of foreign origin.* There is no restriction on the provision of enrichment services to persons furnishing as feed material uranium of foreign origin where the enriched product is not intended to be used in a utilization facility (as defined in the Act) within or under the jurisdiction of the United States. Where the enriched material is intended to be used in a domestic utilization facility, however, the standard contracts will prohibit the furnishing of feed material of foreign origin. This prohibition is established, pursuant to section 161v of the Act, in order to assure the maintenance of a viable domestic uranium industry. From time to time, the AEC will review the condition of the domestic mining and milling industry to determine the need for continuing this restriction, modification or removal of which shall constitute a change in these criteria.

5. *General features of standard domestic contracts.* The following types of contracts have been developed in the light of the uncertainties necessarily attendant to contracts which may be for periods as great as 30 years. Accordingly such contracts will provide that, at the request of either the AEC or the customer, the parties will negotiate and, to the extent mutually agreed, amend them, without additional consideration, in a manner consistent with the criteria then established by the Commission in accordance with the requirements of section 161v of the Act to eliminate or reduce restrictive provisions which the parties determine are inequitable, discriminatory or no longer required to protect their interests. The AEC will use two standard types of uranium enrichment contracts to be entered into with domestic licensees. These are entitled (a) "Agreement for Furnishing Uranium Enrichment Services (Domestic Customers—Firm Quantities)," and (b) "Agreement for Furnishing Uranium Enrichment Services (Domestic Customer's Requirements)." The AEC may also offer a uranium enrichment contract combining features of the foregoing types of contract. The type of contract first mentioned, at the customer's option, will either (i) define the specific quantities and assays of enriched uranium to be delivered to the customer, the schedule for such deliveries, and the quantity and assay (or a range of quantities and assays within permitted amounts) of feed material other than natural uranium to be delivered by the customer, with the remainder of the required feed material to be delivered as natural uranium, or (ii) define the amount of enriching services to be performed by the AEC in terms of units of separative work as related to the AEC's standard table of enriching services in effect at the time the parties agree to such amounts and provide for the adjustment of such amounts in the event of a revision of the AEC's standard table of enriching services through the application of such revised standard table to the relevant portion of a reference schedule of feed material deliveries by the customer and enriched uranium deliveries by the AEC incorporated into the contract for this purpose. The second type would provide for the furnishing of part or all of the customer's requirements for enriching services for a designated facility or facilities during the term of the contract.

In addition to the items discussed above, the more significant provisions of the standard domestic contracts are summarized below:

(a) *Delivery schedules.* Deliveries of specific quantities and U-235 assays of feed material to AEC and enriched uranium to the customer shall be in accordance with the agreement between the parties and (except as provided in 1(b) above) in accordance with the published AEC standard table of enriching services in effect at the time of the delivery of enriched uranium by the AEC. The schedule for delivering enriched uranium to the customer shall reflect an interval after receipt of feed material equivalent to the estimated average time which would be required to receive, handle, and process equivalent feed material to the desired enriched uranium. The AEC will not necessarily use the specific feed material furnished by the customer in producing the enriched uranium delivered to the customer. Unless otherwise agreed, deliveries of feed material to AEC shall precede requested deliveries of the enriched uranium by at least ninety (90) days. The AEC may agree to perform enriching services in cases where the leadtime requirements for furnishing feed material are not satisfied; in such cases, an appropriate surcharge may also be imposed to provide for recovery of



HeinOnline --- 31 Federal Register No. 248 page 16479 (1966)

Case 1:96-cv-00407-LB Document 17-2 Filed 01/15/2004 Page 3 of 4


additional AEC costs and interest charges.

(b) *Chemical form and specifications of material.* Both feed material furnished to the AEC and enriched uranium delivered to the customer are required to be in the form of $UF_6$ and conform to the AEC's established specifications as published in the FEDERAL REGISTER and in effect on the date of delivery.

(c) *Charge for enriching services.* (1) The charge for enriching services, in accordance with the Act, will be established on a nondiscriminatory basis and provide reasonable compensation to the Government. Applicable charges for enriching services and related services will be those in effect at the time of delivery of enriched uranium to the customer as (i) published in the FEDERAL REGISTER, or (ii) in the absence of such publication, determined in accordance with the Commission's pricing policy. The charge per unit of separative work for enriching services will be the same as that employed in the Commission's published schedule of charges for sale or lease of enriched uranium. The AEC may impose an appropriate surcharge representing additional costs if any to the AEC for providing enriching services on short notice.

(2) The Act requires that such charges provide reasonable compensation to the Government. AEC's charge for enriching services will be established on a basis that will assure the recovery of appropriate Government costs projected over a reasonable period of time. The cost of separative work includes electric power and all other costs, direct and indirect, of operating the gaseous diffusion plants; appropriate depreciation of said plants; and a factor to cover applicable costs of process development, AEC administration and other Government support functions, and imputed interest on investment in plant and working capital. During the early period of growth of nuclear power, there will be only a small civilian demand on the large AEC diffusion plants. These plants were originally constructed for national security purposes, but will be utilized in meeting future civilian requirements. In this interim period of low plant utilization, the Commission has determined that the costs to be charged to the separative work produced for civilian customers will exclude those portions of the costs attributable to depreciation and interest on plant investment which are properly allocable to plant in standby and to excess capacity.

(3) Projections of supply and demand over a reasonable time period will be used in establishing a plan for diffusion plant operations. This plan will be the basis for establishing an average charge for separative work over the period involved, which charge will be kept as stable as possible as operating plans are periodically updated. Under such operating plans, AEC will at times be preproducing enriched uranium. Interest on the separative work costs of any such preproduced inventories will be factored into the average separative work charges.

(d) *Ceiling on charge for enrichment services.* The contract shall specify for the term of the agreement a guaranteed ceiling charge, subject to upward escalation for the cost of electric power and labor. The ceiling charge as of July 1, 1965, the base date for application of escalation, is $30 per Kg unit of separative work for separation of U-235 from U-238. (In its standard table of enriching services, as well as its schedule of charges for sale or lease of enriched uranium, AEC will take into account any significant effect of the presence of other isotopes of uranium on the number of separative work units required to perform a given U-235, U-238 separation.)

(e) *Customer's option to acquire tails material.* The customer shall be granted an option to acquire tails material (depleted uranium) resulting from the performance of enriching services. The option as to quantity (Kg U) of tails material desired by the customer, within the maximum quantity subject to the option, must be exercised at the time of delivery of the related quantity of feed material. The U-235 assay of the tails material delivered to the customer will be within the sole discretion of the AEC. The maximum quantity of depleted uranium subject to the option will be equal to the difference between the total uranium supplied by the customer as feed material and the total enriched uranium furnished to the customer, less processing losses as established from time to time by the AEC. No charge will be made for tails material delivered to the customer under the agreement other than AEC's withdrawal, handling and packaging charges. Delivery of tails material will normally be at the same time as delivery of enriched uranium.

(f) *Responsibility for material meeting specifications.* The customer warrants that all feed material meets specifications and, with stated exceptions, agrees to hold the AEC and its representatives harmless from all damages, liabilities, or costs arising out of a breach of the warranty where such damages, liabilities, or costs are incurred prior to final acceptance of the feed material by AEC. However, the customer is not deprived of any rights under indemnification agreements entered into pursuant to section 170 of the Act (Price-Anderson indemnification). The AEC's obligation to furnish specification material to the customer terminates upon final acceptance of such material by the customer.

(g) *Termination by AEC.* (1) The contract may be terminated by AEC without cost to AEC upon reasonable notice at such time as commercial enriching services are provided by another domestic source; provided, however, that AEC will upon request by the customer rescind any notice of termination and will continue to furnish the services specified in the contract if the services of the domestic source are not available to the customer: (i) To the extent provided for in the AEC contract during the remainder of its term; (ii) on terms and conditions which are considered by the AEC to be reasonable and nondiscriminatory as between domestic and foreign customers; and (iii) at charges considered by AEC to be reasonable, nondiscriminatory, and no higher than the ceiling charge under the AEC contract, as escalated for the cost of electric power and labor.

(2) The AEC may terminate the contract without cost to the AEC in the event the customer loses its right to possess enriched uranium, defaults on its contractual obligations, or becomes involved in bankruptcy proceedings. In such instances the customer will be required to pay a termination charge determined as if the customer had terminated the contract on the notice, if any, given the customer by the AEC.

(h) *Termination by customer.* The customer may terminate the contract in whole or in part. In such instances the customer will be required to pay a termination charge equal to a specified fraction of the charges for those enriching services which would have been furnished but for such termination. Such fraction of such charge shall be a maximum of 0.25 of such charge for those amounts for which minimum advance notice of termination is given and shall be a lesser figure for amounts terminated for which a longer notice period is given. No termination charges shall apply to amounts of separative work which would have been furnished at times 3½ years or more subsequent to the date of receipt of the notice of termination of such amounts. The amounts of separative work and enriching services charges related thereto (prior to the application of the specified fraction) shall be determined in accordance with the published AEC standard table of enriching services and established charges in effect on the date of the receipt of the notice of termination. The AEC will determine the extent to which, if any, such termination charges exceed the probable costs to the Commission which may arise from such termination and such charges shall be correspondingly reduced. Such determination shall be final. Upon request of the customer prior to its delivery of a notice of termination, the AEC will advise the customer of the approximate amount of termination charges which would be payable.

(i) *Delivery—title.* The f.o.b. delivery point for both feed material furnished to AEC and enriched uranium delivered to the customer is the designated AEC facility. The AEC's enriching facilities are situated at Oak Ridge, Tenn.; Paducah, Ky.; and Portsmouth, Ohio. Title to all material passes upon delivery.

(j) *Changes in charges and specifications.* Any change made after July 1, 1968, in the specification for $UF_6$, the AEC's standard table of enriching services, or any increase in the charge per unit of separative work for enriching services shall require at least 180 days' notice to the customer by publication in the FEDERAL REGISTER.

(k) *Customer's requirements contracts.* In addition, requirements contracts will provide:



HeinOnline --- 31 Federal Register No. 248 page 16480 (1966)

Case 1:96-cv-00407-LB Document 17-2 Filed 01/15/2004 Page 4 of 4


(1) *Quantities and enrichments of material.* The customer will be committed to obtain, and the Commission to provide, part or all of the customer's actual requirements for enriching services for a designated facility or facilities during the term of the agreement. Timely notice of the customer's requirements must be furnished to AEC. Except as provided in 1(b) above the quantities and enrichments of feed material furnished by the customer will be those required, in accordance with the published AEC standard table of enriching services, to obtain the material of higher enrichment desired by the customer. A maximum net amount of enriching services to be provided will be established.

(2) *Utilization of material.* The contract will provide the basis for determining the portion of the customer's requirements for enriching services to be furnished by the AEC by describing the extent to which:

a. enriched uranium furnished by the AEC under the contract will, after being used in or in support of the operation of the designated facilities, be recycled or delivered to the AEC as feed material under the contract;

b. plutonium or U-233 produced in and discharged from the designated facilities will be recycled for use in or in support of the operation of the designated facilities;

c. special nuclear material obtained from sources other than through the contract or the operation of the designated facilities, will be used in or in support of the operation of the designated facilities, including delivery of such material to the AEC as feed material under the contract.

Where the contract does not initially provide for the recycle for use, as in b. above of the plutonium or U-233 produced, the customer, at any time prior to June 30, 1973, or such later date as the AEC may establish for this purpose, may elect, without incurring termination charges, to so use such plutonium or U-233 thereafter. In such cases, the contract will also provide for use of plutonium or U-233, as the case may be, from another source in lieu of such produced material. The customer may further change such utilization of material by agreement or by terminating the contract in whole or in part.

6. *General features of contracts entered into in accordance with an agreement for cooperation.* It is expected that the general features of uranium enrichment services contracts entered into pursuant to agreements for cooperation with foreign nations or groups of nations will be generally consistent with those discussed above.

7. *Correspondence.* Any correspondence involving this notice or request for copies of standard contract forms should be addressed to:

Manager, Oak Ridge Operations Office, U.S. Atomic Energy Commission, Post Office Box E, Oak Ridge, Tenn. 37830.

Dated at Washington, D.C., this 19th day of December 1966.

For the Atomic Energy Commission.

W. B. McCool,
*Secretary.*

[F.R. Doc. 66-13756; Filed, Dec. 22, 1966; 8:45 a.m.]

# CIVIL AERONAUTICS BOARD

[Docket No. 17613]

## ALOHA/HAWAIIAN CERTIFICATE AMENDMENT PROCEEDING

### Notice of Hearing

Notice is hereby given, pursuant to provisions of the Federal Aviation Act of 1958, as amended, that hearing in the above-entitled proceeding is assigned to be held on January 19, 1967, at 9 a.m. (local time) in the Transportation Conference Room, Department of Transportation Building, 869 Punchbowl Street, Honolulu, Hawaii, before the undersigned Examiner.

Dated at Washington, D.C., December 19, 1966.

[SEAL] Thomas L. Wrenn,
*Associate Chief Examiner.*

[F.R. Doc. 66-13795; Filed, Dec. 22, 1966; 8:48 a.m.]

[Docket No. 17615]

## HILO-MAINLAND TEMPORARY SERVICE INVESTIGATION

### Notice of Hearing

Notice is hereby given, pursuant to provisions of the Federal Aviation Act of 1958, as amended, that hearing in the above-entitled proceeding is assigned to be held on January 25, 1967, at 10 a.m. (local time) in the Hilo Electric Auditorium, 1200 Kilauea Avenue, Hilo, Hawaii, before the undersigned Examiner.

Dated at Washington, D.C., December 19, 1966.

[SEAL] Thomas L. Wrenn,
*Associate Chief Examiner.*

[F.R. Doc. 66-13796; Filed, Dec. 22, 1966; 8:48 a.m.]

# DEPARTMENT OF COMMERCE

## Bureau of International Commerce

## COPPER AND RELATED PRODUCTS

### Export Licensing Quotas

Notice is hereby given that the current export licensing quotas for copper and related products will be continued without change for the first half of 1967.

The quotas are as follows:

Ores, concentrates, matte and blister copper—closed quota (embargo).
Refined copper, produced from domestic-origin material—25,000 copper content short tons.
Copper scrap—16,500 copper content short tons.
Copper base alloy ingots—1,000 copper content short tons.
Semifabricated copper products and master alloys of copper—9,000 copper content short tons.
Other copper products—open end quota (no quantitative restrictions).

Historical country quotas for copper scrap have been found to be no longer necessary and are eliminated.

Historical exporters must file license applications with the Office of Export Control not later than May 29, 1967. Nonhistorical exporters must file by January 31, 1967. Applications for licenses to export semifabricated copper products and master alloys of copper are not subject to time schedules and may be submitted at any time.

Rauer H. Meyer,
*Director, Office of Export Control.*

[F.R. Doc. 66-13782; Filed, Dec. 22, 1966; 8:47 a.m.]

# DEPARTMENT OF HEALTH, EDUCATION, AND WELFARE

## Food and Drug Administration

## STAUFFER CHEMICAL CO.

### Notice of Establishment of Temporary Tolerance

Notice is given that at the request of the Stauffer Chemical Co., 1200 South 47th Street, Richmond, Calif. 94804, a temporary tolerance of 0.1 part per million is established for residues of the insecticide *N*-(mercaptomethyl) phthalimide *S*-(*O*,*O*-dimethyl phosphorodithioate) and its oxygen analog in the meat and fat of meat of beef cattle. The Commissioner of Food and Drugs has determined that this temporary tolerance will protect the public health.

A condition under which this temporary tolerance is established is that the insecticide will be used in accord with the temporary permit issued by the U.S. Department of Agriculture.

This temporary tolerance expires December 15, 1967.

This action is taken pursuant to the authority vested in the Secretary of Health, Education, and Welfare by the Federal Food, Drug, and Cosmetic Act (sec. 408(j), 68 Stat. 516; 21 U.S.C. 346a(j)) and delegated by him to the Commissioner (21 CFR 2.120; 31 F.R. 3008).

Dated: December 15, 1966.

James L. Goddard,
*Commissioner of Food and Drugs.*

[F.R. Doc. 66-13790; Filed, Dec. 22, 1966; 8:48 a.m.]

## GEIGY CHEMICAL CORP.

### Notice of Filing of Petition for Food Additives

Pursuant to the provisions of the Federal Food, Drug, and Cosmetic Act (sec. 409(b)(5), 72 Stat. 1786; 21 U.S.C. 348(b)(5)), notice is given that a petition (FAP 7B2130) has been filed by Geigy Industrial Chemicals, Division of Geigy



HeinOnline --- 31 Federal Register No. 248 page 16481 (1966)